# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

GERTRENA GRACE C.,                    *
                                      *
              Plaintiff,              *
                                      *
     vs.                              *        Civil Action No.   ADC-19-164
                                      *
COMMISSIONER, SOCIAL SECURITY         *
ADMINISTRATION,[1]                    *
                                      *
              Defendant.              *
                                      *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* .

## MEMORANDUM OPINION

On January 17, 2019, Gertrena Grace C. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny her claims for Disability Insurance Benefits ("DIB"). *See* ECF No. 1 ("the Complaint"). After consideration of the Complaint and the parties' cross-motions for summary judgment (ECF Nos. 10, 13), the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2018). In addition, for the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 10) is DENIED, and Defendant's Motion for Summary Judgment (ECF No. 13) is GRANTED.

## PROCEDURAL HISTORY

On January 20, 2016, Plaintiff filed a Title II application for DIB, alleging disability beginning December 1, 2015. Her claims were denied initially and upon reconsideration on May 26, 2016, and November 15, 2016, respectively. Subsequently, on December 13, 2016, Plaintiff filed a written request for a hearing and, on January 22, 2018, an Administrative Law Judge

---

[1] Currently, Andrew Saul serves as the Commissioner of the Social Security Administration.

("ALJ") presided over a video hearing. On March 21, 2018, the ALJ rendered a decision ruling that Plaintiff "ha[d] not been under a disability within the meaning of the Social Security Act [(the "Act")] from December 1, 2015, through the date of this decision." ECF No. 7-4 at 32.[2] Thereafter, Plaintiff filed an appeal of the ALJ's disability determination, and on November 19, 2018, the Appeals Council denied Plaintiff's request for review. Thus, the decision rendered by the ALJ became the final decision of the SSA. *See* 20 C.F.R. § 416.1481 (2018); *see also Sims v. Apfel*, 530 U.S. 103, 106–07 (2000).

On January 17, 2019, Plaintiff filed the Complaint in this Court seeking judicial review of the SSA's denial of her disability application. On July 12, 2019, Plaintiff filed a Motion for Summary Judgment, and Defendant filed a Motion for Summary Judgment on October 25, 2019. Plaintiff did not respond to Defendant's motion and the time to do so has since passed.[3] This matter is now fully briefed, and the Court has reviewed both parties' motions.

## STANDARD OF REVIEW

"This Court is authorized to review the [SSA]'s denial of benefits under 42 U.S.C.A. § 405(g)." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (citation omitted). The Court, however, does not conduct a *de novo* review of the evidence. Instead, the Court's review of an SSA decision is deferential, as "[t]he findings of the [SSA] as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g); *see Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) ("We do not

---

[2] The Court cites to the page numbers generated by the CM/ECF filing system.

[3] On December 5, 2019, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings.

2

conduct a *de novo* review of the evidence, and the [SSA]'s finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence." (citations omitted)).

Therefore, the issue before the reviewing court is not whether the plaintiff is disabled, but whether the ALJ's finding that the plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017) ("[A] reviewing court must uphold the [disability] determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." (citation and internal quotation marks omitted)).

"Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (internal citations and quotation marks omitted). "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal citations and quotation marks omitted). Therefore, in conducting the "substantial evidence" inquiry, the court shall determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible for DIB, a claimant must establish that she is under disability within the meaning of the Act. The term "disability," for purposes of the Act, is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

3

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). A claimant shall be determined to be under disability where "h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Act, the ALJ, acting on behalf of the SSA, follows the five-step evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). The evaluation process is sequential, meaning that "[i]f at any step a finding of disability or nondisability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments] that meets the duration requirement[.]" 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirement of twelve months, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.909, 416.920(a)(4)(ii), 416.920(c).

4

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, then the claimant is considered disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's residual functional capacity ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). At this second stage, the ALJ must consider all of the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective

medical evidence. SSR 16-3p, 2017 WL 5180304, at *2–13 (Oct. 25, 2017). To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments she has received for her symptoms, medications, and any other factors contributing to functional limitations. *Id.* at *6–8.

At step four, the ALJ considers whether the claimant is able to perform past relevant work based on the determined RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).

Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. During steps one through four of the evaluation, the claimant has the burden of proof. 20 C.F.R. §§ 404.1520, 416.920; *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Radford*, 734 F.3d at 291. At step five, however, the burden of proof shifts to the ALJ to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC (as determined at step four), and; (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see Hancock*, 667 F.3d at 472–73; *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the claimant can perform other work that exists in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 404.1560(c), 416.920(a)(4)(v). If the claimant cannot perform other work, then the claimant is disabled. *Id.*

## ALJ DETERMINATION

In the instant matter, regarding Plaintiff's DIB claim, the ALJ preliminarily found that Plaintiff met the insured status requirements of Title II of the Act through June 30, 2020. ECF No.

7-4 at 34. The ALJ then performed the sequential evaluation and found at step one that Plaintiff "ha[d] not engaged in substantial gainful activity since December 1, 2015, the alleged onset date." *Id.* At step two, the ALJ found that Plaintiff had the following severe impairments: "spine disorders, essential hypertension, migraine headaches, and affective disorders." *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* at 36. At step four, the ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR 404.1567(b), except she requires a sit-stand option, which allows her to alternate to standing for five minutes (while remaining on task) after every hour of sitting. She rarely can climb ramps and stairs, and she never can climb ladders, ropes, or scaffolds. She rarely can stoop or crouch. [Plaintiff] is expected to be off task five percent of the workday. She can perform simple, routine tasks.

*Id.* at 39. The ALJ then determined that Plaintiff had past relevant work as a house counselor and a certified nurse assistant, which she was no longer able to perform. *Id.* at 45. Finally, at step five, the ALJ found that, "[c]onsidering [Plaintiff]'s age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." *Id.* at 46. Thus, the ALJ concluded that Plaintiff "ha[d] not been under a disability, as defined in the [Act], from December 1, 2015, through the date of this decision." *Id.* at 47.

**DISCUSSION**

Plaintiff alleges various errors at almost every step of the ALJ's evaluation, and the allegations of error at each step contain several subparts. Plaintiff argues generally: (1) that the ALJ failed to classify a number of impairments as severe at step two; (2) that the ALJ failed to evaluate the listings for Plaintiff's migraines and mental health impairments at step three; (3) that the ALJ in evaluating Plaintiff's RFC improperly assessed Plaintiff's credibility, failed to perform a function-by-function analysis, and improperly weighed the medical opinion evidence; and (4)

that the ALJ posed improper hypotheticals to the Vocational Expert ("VE") at the hearing, and that the VE's testimony was inconsistent with the Dictionary of Occupational Titles ("DOT"). The Court is unpersuaded by these arguments.[4] Each alleged error is addressed below.

### 1. The ALJ Did Not Err at Step Two of the Sequential Evaluation.

Plaintiff first challenges the ALJ's failure to classify as severe her bilateral osteoarthritis/degenerative arthritis in her knees, bilateral shoulder impairments, and left ankle tibialis posterior dysfunction and tendonitis. ECF No. 10-1 at 9–11. Plaintiff also alleges that the ALJ failed to account for Plaintiff's alleged impairments of syncope and chronic insomnia and fatigue in the entire analysis. *Id.* at 11. The Court disagrees.

Step two requires "a threshold determination of whether a [plaintiff] is suffering from a severe impairment or a combination of impairments." *Lewis v. Comm'r of Soc. Sec.*, SAG-15-84, 2015 WL 5905276, at *2 (D.Md. Oct. 6, 2015) (citing *Bowen v. Yuckert*, 482 U.S. 137, 147–48 (1987)). "If a [plaintiff] is found to be suffering from a severe impairment(s), the analysis simply proceeds to the next step." *Id.* (citing 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii)). When

---

[4] Plaintiff's attorney, Andrew N. Sindler, Esq., has been advised before by this Court to cease his "use of a 'form brief' containing a long list of legal arguments, without adequate consideration as to whether each argument is applicable as written or persuasive in a given situation." *Griffin v. Comm'r, Soc. Sec. Admin.*, SAG-16-274, 2017 WL 432678, at *3 n.2 (D.Md. Jan. 31, 2017). The Court takes this opportunity to again emphasize that "presenting the Court with a lengthy set of identical arguments to address in an identical order in each case simply expends judicial resources and does not benefit the clients, because the meritorious arguments can get buried in arguments that are less compelling." *Id.* The Court has reviewed some of the motions for summary judgment Mr. Sindler filed in other cases around the same time as he filed the Motion in this case, and it has discovered that Mr. Sindler, contrary to this Court's instruction, still advances arguments against every challengeable step of the sequential evaluation in most of his cases as a matter of course. *See, e.g.*, Mot. Summ. J., *Dew v. Comm'r, Soc. Sec. Admin.*, SAG-18-2041 (D.Md. Apr. 1, 2019), ECF No. 14; Mot. Summ. J., *Hare v. Berryhill*, TMD-18-1675 (D.Md. Nov. 26, 2018), ECF No. 12; Mot. Summ. J., *Bonner v. Berryhill*, TJS-18-1785 (D.Md. Jan. 13, 2019), ECF No. 15. This Court renews its prior encouragement that counsel "look at each potential contention more critically prior to reverting to the same list of boilerplate arguments, and to highlight up front the most persuasive arguments in each particular case." *Griffin*, 2017 WL 432678, at *3 n.2.

a plaintiff makes a "threshold showing that other disorders constituted severe impairments" and "the ALJ continued with the sequential evaluation process," an ALJ's failure to find an additional impairment nonsevere is harmless. *Davis v. Comm'r, Soc. Sec. Admin.*, SAG-12-813, 2013 WL 1124589, at *1 (D.Md. Mar. 18, 2013).

At step two, the ALJ found Plaintiff had severe impairments of "spine disorders, essential hypertension, migraine headaches, and affective disorders." ECF No. 7-4 at 34. The ALJ also found that Plaintiff had non-severe impairments of tibiaialis posterior dysfunction and tibialis posterior tendonitis in her left ankle, a rotator cuff tear or strain in her left shoulder, degenerative joint disease in her knees, and a frozen right shoulder. *Id.* at 35. The ALJ then found that Plaintiff did not have medically determinable impairments of reconstructive surgery of a major weight-bearing joint, lupus, fibromyalgia, or carpal tunnel syndrome, as the record "d[id] not disclose sufficient objective medical evidence to substantiate these medical conditions." *Id.* at 36. The ALJ specified later in his RFC analysis that he "considered the entire record" while comparing Plaintiff's allegations with the definition of disability. *Id.* at 40.

The ALJ did not err in failing to classify more of Plaintiff's medically determinable impairments as severe. The ALJ declined to classify Plaintiff's left ankle, bilateral shoulder, and bilateral knee impairments as severe because there was "no medical documentation that any of these impairments resulted in more than minimal functional limitations for at least [twelve] consecutive months." *Id.* at 35. A twelve-month duration is a requirement for an impairment to be classified as "severe." *See* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 404.1520(c). Furthermore, even if the ALJ did err in failing to find more of Plaintiff's impairments severe, such an error would be harmless, as the ALJ still continued with the sequential evaluation process based on finding other impairments severe. *See Davis*, 2013 WL 1124589, at *1.

9

Additionally, Plaintiff's argument that the ALJ erred by failing to consider her syncope and chronic insomnia and fatigue is misguided. The ALJ discussed Plaintiff's syncope in his RFC analysis and noted her treating physicians opined it was caused by Plaintiff's anxiety. ECF No. 7-4 at 41–42. In this context, Plaintiff's syncope is better described as a symptom of her severe affective disorders rather than a severe impairment itself. Regarding Plaintiff's chronic insomnia and fatigue, the ALJ also discussed and considered her allegations of fatigue in his RFC analysis. *See id.* at 40, 42. Notably, Plaintiff has only complained of fatigue intermittently since February 2014. Even if the ALJ erred in failing to classify Plaintiff's syncope and chronic insomnia and fatigue as severe at step two, such an error would be harmless, as the ALJ discussed these diagnoses in his RFC analysis and found other impairments to be severe.

Because the ALJ found other severe impairments at step two of his analysis, the ALJ's failure to classify more of Plaintiff's impairments as severe is no basis for remand. Accordingly, the ALJ did not err at step two of her evaluation.

**2. The ALJ Did Not Err at Step Three of the Sequential Evaluation.**

Plaintiff next contends that the ALJ erred by failing to find that Plaintiff's severe impairments did not meet the criteria of a listed impairment. ECF No. 10-1 at 12–15. Specifically, Plaintiff argues that the ALJ's analysis of her migraine headaches under section 11.00 *et seq.* was "extremely deficient," and that the ALJ erred in assessing whether Plaintiff met the mental impairment listings under the paragraph B criteria. *Id.* The Court disagrees.

At step three of the sequential evaluation, the ALJ must determine whether the claimant's impairments meet or equal one or more of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. Where a claimant can show that his condition "meets or equals the listed impairments," the claimant is entitled to a conclusive presumption that he is disabled within the meaning of the Act.

*Bowen v. City of New York*, 476 U.S. 467, 471 (1986); *McNunis v. Califano*, 605 F.2d 743, 744 (4th Cir. 1979) (stating that the listings, if met, are "conclusive on the issue of disability"). The burden of proof is on the claimant to show that he meets *all* the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

"In evaluating a claimant's impairment, an ALJ must fully analyze whether a claimant's impairment meets or equals a 'Listing' where there is factual support that a listing could be met." *Huntington v. Apfel*, 101 F.Supp.2d 384, 390 (D.Md. 2000) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)). However, "[u]nder *Cook*, the duty of identification of relevant listed impairments and comparison of symptoms to Listing criteria is only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments." *Ketcher v. Apfel*, 68 F.Supp.2d 629, 645 (D.Md. 1999). "Neither the Social Security law nor logic commands an ALJ to discuss all or any of the listed impairments without some significant indication in the record that the claimant suffers from that impairment." *Id.* On the other hand, "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford*, 734 F.3d at 295 (internal citations omitted).

Remand is appropriate where the "ALJ's opinion failed to apply the requirements of the listings to the medical record." *Id.* at 292; *Fox v. Colvin*, 632 F.App'x 750, 755–56 (4th Cir. 2015) (holding that the ALJ's conclusory and perfunctory analysis at step three necessitated remand). In evaluating whether an ALJ's listing comparison was proper, however, the Court is not confined to the ALJ's analysis at step three and instead must consider the reasoning provided by the ALJ in the decision in its entirety. *See Schoofield v. Barnhart*, 220 F.Supp.2d 512, 522 (D.Md. 2002)

11

(holding remand is not warranted "where it is clear from the record which [Listing] . . . w[as] considered, and there is elsewhere in the ALJ's opinion an equivalent discussion of the medical evidence relevant to the [s]tep [t]hree analysis which allows [the reviewing c]ourt readily to determine whether there was substantial evidence to support the ALJ's [s]tep [t]hree conclusion").

A. *The ALJ did not err in evaluating Plaintiff's impairments under Listing 11.00.*

Plaintiff first argues the ALJ failed to properly evaluate her headaches under Listing 11.00. ECF No. 10-1 at 12–13. Listing 11.00 states in its opening paragraph that it is designed to evaluate the neurological disorders of "epilepsy, amyotrophic lateral sclerosis, coma or persistent vegetative state (PVS), and neurological disorders that cause disorganization of motor function, bulbar and neuromuscular dysfunction, communication impairment, or a combination of limitations in physical and mental functioning." 20 C.F.R. pt. 404, subpt. P, app.1, 11.00(A). Plaintiff does not allege any condition or impairment analogous to those described in the introduction to Listing 11.00. While the ALJ's discussion of his consideration of her headaches under "11.00 *et seq.*," ECF No. 7-4 at 37, was brief and conclusory, that does not automatically indicate it was deficient and warrants remand. The ALJ was not required to fully analyze the Listing because there was not "factual support that a listing could be met." *Huntington*, 101 F.Supp.2d at 390 (citing *Cook*, 783 F.2d at 1172). Notably, even if the ALJ's step three analysis was deficient, the Court is permitted to consider the ALJ's reasoning in the rest of the opinion to evaluate whether remand is warranted. *Schoofield*, 220 F.Supp.2d at 522. The ALJ clearly detailed and considered Plaintiff's headaches in his RFC analysis, so any error at step three would be harmless, and would not necessitate remand. *See, e.g.*, ECF No. 7-4 at 42 (detailing appointments during which Plaintiff complained of headaches).

Plaintiff specifically argues that her headaches should be evaluated under Listing 11.02, under which epilepsy is analyzed. ECF No. 10-1 at 13. Per the Listing, "[e]pilepsy is a pattern of recurrent and unprovoked seizures that are manifestations of abnormal electrical activity in the brain." 20 C.F.R. pt. 404, subpt. P, app. 1, 11.00(H)(1). While the Court is unconvinced that headaches are analogous to seizures, Plaintiff's occasional fainting experiences (which are caused by her anxiety)—not her headaches—are most similar to dyscognitive seizures, which "are characterized by alteration of consciousness without convulsions of loss of muscle control." *See id.* at 11.00(H)(1)(b). In order to meet the criteria of Listing 11.02, however, Plaintiff must have documented dyscognitive seizures "occurring at least once every [two] weeks for at least [three] consecutive months . . . despite adherence to a prescribed treatment." *Id.* at 11.02(D). The documented seizures must also be accompanied by a marked limitation in one of the following categories: (1) "physical functioning," (2) "understanding, remembering or applying information," (3) "interacting with others," (4) "concentrating, persisting, or maintaining pace," or (5) "adapting or managing oneself." *Id.* Even if the Court were to accept Plaintiff's argument that she suffers from seizures,[5] she does not have a marked limitation in any of the required categories. Accordingly, the ALJ did not err in evaluating Listing 11.00 at step three.

B. *The ALJ did not err in evaluating Plaintiff's mental impairments.*

---

[5] Importantly, if the Court accepted the proposition Plaintiff suffers from seizures, the seizures would have to occur "at least once every [two] weeks" for at least three months despite treatment to meet the Listing. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, 11.02(D). While Plaintiff contends in her motion that she suffers from headaches daily, ECF No. 10-1 at 13, that claim is contradicted by her treating physician, who reported the headaches occur at most twice per month and respond well to medication, *see* ECF No. 7-8 at 230, 264. Plaintiff testified at her hearing that her fainting episodes, which would be the only symptom reasonably comparable to dyscognitive seizures, occur "[m]aybe, like, every month." ECF No. 7-3 at 109. Accordingly, Plaintiff does not meet the durational requirements of Listing 11.02 under any theory.

Plaintiff also argues that the ALJ failed to properly analyze her mental impairments. ECF No. 10-1 at 13–15. Listings 12.00 *et seq.* pertain to mental impairments. 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00. "Each [L]isting therein, consists of: (1) a brief statement describing its subject disorder; (2) 'paragraph A criteria,' which consists of a set of medical findings; and (3) 'paragraph B criteria,' which consists of a set of impairment-related functional limitations." *Rayman v. Comm'r, Soc. Sec. Admin.*, No. SAG-14-3102, 2015 WL 6870053, at *2 (D.Md. Nov. 6, 2015) (citing 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00(A)). If the paragraph A and paragraph B criteria are satisfied, the ALJ will find that the claimant meets the listed impairment. *Id.*

Paragraph B provides the functional criteria assessed by the ALJ and consists of four broad functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00(A)(2)(b). The ALJ employs a "special technique" to rate the degree of a claimant's functional limitations in these areas. 20 C.F.R. §§ 404.1520a(b), 416.920a(b). The ALJ's evaluation must determine "the extent to which [the claimant's] impairment(s) interferes with [the] ability to function independently, appropriately, effectively, and on a sustained basis" and must include a specific finding as to the degree of limitation in each of the four functional areas. 20 C.F.R. §§ 404.1520a(c), 416.920a(c). The ALJ uses a five-point scale to rate a claimant's degree of limitation in these areas: none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). "To satisfy the paragraph B criteria, [a claimant's] mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00(A)(2)(b).

Here, the ALJ properly evaluated and detailed his findings for each of the four areas of mental functioning. In understanding, remembering, or applying information, the ALJ found that

14

Plaintiff had no limitation because of her ability to recall information both during her mini-mental status examination and at the hearing as well as her statement that she does not need reminders for personal care but does need reminders for her medication. ECF No. 7-4 at 37 (citing ECF No. 7-8 at 154, 156 (describing mental status evaluation of Plaintiff); ECF No. 7-7 at 31 (Plaintiff's Function Report)). In interacting with others, the ALJ found Plaintiff had a mild limitation because she stated she generally gets along well with others, has been cooperative in her examinations, and only occasionally has mood swings. *Id.* at 37–38 (citing ECF No. 7-8 at 153–54). In concentrating, persisting, or maintaining pace, the ALJ found that Plaintiff had a moderate limitation because although she scored a 27 out of 30 on her mini-mental status examination and was goal-directed and coherent, Plaintiff testified she felt her concentration was poor. *Id.* at 38. Finally, in adapting or managing oneself, the ALJ found that Plaintiff had no limitation because most of her activities are done on her own initiative and she only alleges difficulties managing herself based on her physical, not mental, health. *Id.* (citing ECF No. 7-8 at 156; ECF No. 7-7 at 30–32). Accordingly the ALJ properly described how he assessed each area of Plaintiff's mental health functioning. Therefore, the ALJ did not err at step three.

### 3. The ALJ's RFC Analysis Is Supported by Substantial Evidence.

Plaintiff makes a variety of arguments challenging the ALJ's RFC analysis. First, Plaintiff argues the ALJ improperly evaluated her credibility contrary to *Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017). ECF No. 10-1 at 19–23. Next, Plaintiff argues the ALJ failed to perform a proper function-by-function analysis contrary to *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015), leading to an "ambiguous and contradictory" finding. *Id.* at 23–26. Finally, Plaintiff argues the ALJ improperly weighed the medical opinion evidence and violated the treating physician rule. *Id.* at 27–28. The Court disagrees.

*A. The ALJ properly evaluated Plaintiff's credibility under* Lewis v. Berryhill.

Plaintiff first contends the ALJ improperly evaluated her credibility contrary to *Lewis v. Berryhill.* The United States Court of Appeals for the Fourth Circuit laid out the two-step process for evaluating whether a person is disabled by pain and other symptoms under 20 C.F.R. §§ 404.1529 and 416.929:

> Under the regulations implementing the [Act], an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms. Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. The second determination requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects.

*Lewis,* 858 F.3d at 865–66 (internal citations omitted); *see also Craig,* 76 F.3d at 594 (describing the two-step process). At the second stage, the ALJ must consider all the available evidence, including the claimant's medical history, medical signs, statements by the claimant and her treating or examining physicians, objective medical evidence of pain, and any other information proffered by the claimant. 20 C.F.R. §§ 404.1529(c)(1)–(3), 416.929(c)(1)–(3). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 16-3p, 2017 WL 5180304, at *1–12 (Oct. 25, 2017). To assess credibility, the ALJ should consider factors such as the claimant's ability to perform daily activities, activities that precipitate or aggravate the symptoms, medications and treatments used, and other methods used to alleviate the symptoms. *Id.* at *6.

In addition, the ALJ should consider inconsistencies in the evidence to determine whether a claimant's subjective claims regarding her pain symptoms can reasonably be accepted. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Subjective symptoms of pain, standing alone, cannot sustain a

finding of disability and a claimant must substantiate her allegations of pain. 20 C.F.R. §§ 404.1529, 416.929; *see also Mickles v. Shalala*, 29 F.3d 918, 923 (4th Cir. 1994) (stating that pain may render claimant incapable of working independent of any physical limitation, but allegations of pain alone are insufficient to find a disability). "According to the regulations, the ALJ 'will not reject [a claimant's] statements about the intensity and persistence of [her] pain or other symptoms or about the effect [the claimant's] symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [the claimant's] statements.'" *Lewis*, 858 F.3d at 866 (quoting 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)). The ALJ, therefore, is required to make a finding regarding a claimant's credibility and should specifically refer to the evidence supporting that finding, *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (per curiam), but the ALJ cannot discount Plaintiff's subjective evidence of pain solely based on objective medical findings, *Lewis*, 858 F.3d at 866 (citing 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)).

Plaintiff alleges the ALJ capriciously "cherry picked" the record to undercut her credibility. *See* ECF No. 10-1 at 21. Not so. While an ALJ cannot discount a claimant's credibility based *solely* on contradictory objective medical evidence, an ALJ can discount a claimant's credibility based on inconsistencies in the record and the evidence therein. *See* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Here, while the ALJ did consider some objective medical evidence in his credibility analysis, he also considered Plaintiff's Function Report, in which Plaintiff herself alleged limitations in every single category on the form, despite the lack of medical evidence to support many of these categories. ECF No. 7-4 at 40 (citing ECF No. 7-7 at 34). The ALJ also noted that Plaintiff's headaches had responded well to medication and no longer occurred as frequently as alleged, per the opinion testimony of her own treating physician. *Id.* at 40, 43. Specifically, while

Plaintiff stated at her hearing that she was experiencing debilitating headaches "daily," she told her treating physician she only experienced migraines "1-2 times a month." *See* ECF No. 7-8 at 230. Similarly, the ALJ gave some weight to other medical opinions contradicting Plaintiff's allegations, the validity of which will be discussed *infra.* ECF No. 7-4 at 43–45. Accordingly, the ALJ based his credibility determination neither on a "cherry picked" record nor solely on objective medical evidence. Because the ALJ's credibility determination was proper and supported by substantial evidence, it is no basis for remand.

*B. The ALJ's RFC finding complied with the requirements of* Mascio v. Colvin.

Next, Plaintiff argues the ALJ erred in failing to provide a function-by-function analysis in making his RFC finding. In determining RFC specifically, an ALJ must consider the entire record, opinion evidence, impairments that are not severe, and any limitations the ALJ finds. 20 C.F.R. §§ 404.1545(a), 416.945(a) (ordering the ALJ to consider the entire record); SSR 96-8p, 1996 WL 374184, at *2 (defining the RFC as an assessment of an individual's ability to perform vocational-related physical and mental activities). Furthermore, it is the duty of the ALJ to make findings of fact and resolve conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)).

Social Security Ruling ("SSR") 96-8p provides the proper framework for evaluating a claimant's RFC. Specifically, the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7 (footnote omitted). Furthermore, "[t]he Ruling instructs that the [RFC] 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations. Only after that may [the RFC] be expressed in terms of the exertional levels of work[:] sedentary, light, medium, heavy, and very heavy." *Mascio*, 780 F.3d at 636 (footnote omitted) (quoting SSR 96-8p, 1996 WL 374184). The Fourth Circuit, however, found that a per se rule requiring remand when an ALJ does not perform "an explicit function-by-function analysis" is inappropriate, because "remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). Instead, the Court found "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177) (alterations in original).

Plaintiff alleges that the ALJ's RFC determination was "ambiguous and contradictory." ECF No. 10-1 at 23 (emphasis omitted). Plaintiff raises several issues alleging the ALJ's determination was insufficient, none of which is persuasive.

First, Plaintiff argues the ALJ improperly limited Plaintiff's exertional level to light, which she argues is contradicted by the imposition of a "sit-stand" option, because a "light" regulation includes walking six hours in an eight-hour day. The ALJ's "sit-stand" option, however, provided that Plaintiff needed to be able to stand up for five minutes after each full hour of sitting, not that she needed to be seated for an hour at a time all day.

Next, Plaintiff argues the ALJ erred by failing to include additional limitations for Plaintiff's migraines, and her accompanying dizziness and syncope, and for Plaintiff's interactions

with others. The ALJ, however, *did* provide limitations for Plaintiff's migraines by mandating "she rarely can climb ramps and stairs, and she never can climb ladders, ropes, or scaffolds." ECF No. 7-4 at 39. The ALJ also was not required to include limitations for Plaintiff's interactions with others because he found Plaintiff only had mild difficulties interacting with others, as she testified "she mostly has a normal temperament and usually gets along well with others." *Id.* at 37 (citing ECF No. 7-8 at 153–54). After taking the record into consideration, the ALJ supported his decision to not include additional social limitations with substantial evidence, primarily from Plaintiff's own testimony.

Finally, Plaintiff argues the ALJ failed to perform a proper function-by-function analysis based on his finding that Plaintiff has a moderate limitation in concentrating, persisting, or maintaining pace. Yet the ALJ did, in fact, account for Plaintiff's moderate limitation in concentrating, persisting, or maintaining pace by including in his RFC finding that she would be off-task five percent of the workday. *Id.* at 39. Contrary to Plaintiff's allegation that five percent is an "arbitrary figure," ECF No. 10-1 at 24, the ALJ based this figure on Dr. Oh's recommendation that Plaintiff would need additional breaks of five to ten minutes three to four times per day, ECF No. 7-4 at 43. While the ALJ did not adopt Dr. Oh's recommendation in full, *see infra* Part 3.C., he used this suggestion to arrive at his five percent figure. If Plaintiff takes a five-minute break four times per day, she will be off-task for twenty minutes total, which is only slightly more than four percent of the day. Accordingly, the ALJ imposed a proper RFC limitation for Plaintiff's moderate limitation concentrating, persisting, or maintaining pace, and the ALJ's RFC analysis was supported by substantial evidence.

*C. The ALJ properly evaluated the medical opinion evidence.*

20

Finally, Plaintiff argues the ALJ improperly evaluated the medical opinion evidence by violating the treating physician rule. ECF No. 10-1 at 27–28. Under the treating physician rule, an ALJ must generally give a treating physician's opinion "more weight . . . since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "When the treating source has seen [the patient] a number of times and long enough to have obtained a longitudinal picture of [the patient's] impairment, [the SSA] will give the medical source's medical opinion more weight than [it] would give it if it were from a nontreating source." 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i). However, where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be afforded significantly less weight. *Lewis*, 858 F.3d at 867 (quoting 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)). Moreover, an ALJ is not required to give controlling weight to a treating physician's opinion on the ultimate issue of disability. 20 C.F.R. § 404.1527(d)(1).

If a treating source's opinion is not given controlling weight, the ALJ must consider the following factors in deciding the appropriate weight to give the treating source's opinion: (1) the length and frequency of the treatment relationship; (2) the nature and extent of the treatment relationship; (3) the amount of evidence supporting the physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the physician is a specialist giving an opinion about his area of specialty; and (6) any other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)–(6). An ALJ need not apply these factors in a mechanical fashion, so long as the ALJ articulates the reasoning behind the weight accorded to the opinion. *Carter v. Astrue*, No. CBD-10-1882, 2011 WL 3273060, at *6 (D.Md. July 27, 2011).

Here, Plaintiff argues that the ALJ erred by only giving her treating physician' opinion partial weight. In Dr. Oh's medical source statement, he identified Plaintiff's only impairment as "classical migraine[]" headaches. ECF No. 7-8 at 264. Dr. Oh's statement in his report that Plaintiff was expected to miss work "about four days per month" because of migraines is contradicted by his own treatment notes, which state Plaintiff has responded well to treatment and only experiences migraines "1-2 times" per month. *Compare* ECF No. 7-8 at 267, *with* ECF No. 7-8 at 230. The ALJ clearly considered Dr. Oh's opinion when formulating the restrictions in Plaintiff's RFC that she needed to be able to stand five minutes after every hour of sitting and was expected to be off task five percent of the day, the ALJ simply lessened the restrictions Dr. Oh recommended, as they were more severe than the medical evidence supported. ECF No. 7-4 at 43. The ALJ also opted to impose a "light" exertional level on Plaintiff's RFC as opposed to Dr. Oh's suggested "sedentary" level, as Plaintiff's spinal impairment is not severe enough to warrant a sedentary exertional level. *Id.* The ALJ generally adopted the rest of Dr. Oh's limitations, and those limitations he did not adopt the ALJ merely modified. Accordingly, the ALJ properly gave Dr. Oh's opinion partial weight.

Plaintiff also challenges the ALJ's disinclination to give controlling weight to a single medical expert opinion. ECF No. 10-1 at 27–28. Plaintiff appears to argue that by declining to label a single medical opinion "controlling," the ALJ failed to rely on sufficient evidence to support his ultimate RFC finding. The Court finds this argument and Plaintiff's purported legal support unpersuasive.[6] Indeed, it is possible for an ALJ to formulate an ultimate RFC finding using a combination of multiple medical opinions—exactly as the ALJ did here. Accordingly, the ALJ did

---

[6] The Court notes that not only did Plaintiff fail to cite to any authority from within this Circuit, the authority she does cite is not at all factually analogous to the current case.

not err in weighing the medical opinion evidence, and his RFC finding was supported by substantial evidence.

### 4. The ALJ Did Not Err at Step Five of the Sequential Evaluation.

Finally, Plaintiff alleges that the ALJ erred at step five by failing to properly consider the hypotheticals proffered to the VE and by relying on VE testimony inconsistent with the DOT. ECF No. 10-1 at 28–33. The Court disagrees.

### A. The ALJ properly declined to consider hypotheticals posed to the VE that were inconsistent with Plaintiff's RFC.

The Commissioner employs VEs to offer evidence as to whether a claimant possesses the RFC to meet the demands of past relevant work or adjust to other existing work. 20 C.F.R. §§ 404.1560(b)–(c), 416.960(b)–(c). The VE may respond to a hypothetical about a person "with the physical and mental limitations imposed by the claimant's medical impairment(s)." 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) (quoting *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)). "[A] hypothetical question is unimpeachable if it adequately reflects a [RFC] for which the ALJ had sufficient evidence." *Fisher v. Barnhart*, 181 F.App'x 359, 364 (4th Cir. 2006) (per curiam) (internal quotation marks omitted) (emphasis omitted) (quoting *Johnson*, 434 F.3d at 659).

At the Plaintiff's hearing, the ALJ presented the VE with the following hypothetical:

> Assume an individual of the Claimant's age, education, and past work who has sedentary exertional limitations. There's also a sit/stand option. The individual needs to alternate to standing after every one hour of sitting. There are postural limitations. The individual . . . can rarely climb ramps and stairs; can never climb ladders, ropes, or scaffolds; rarely stoop; and rarely crouch. The individual would be expected to be off-task, in addition to normal breaks, approximately 5% of the time in an eight hour work day.

ECF No. 7-3 at 130. As Plaintiff acknowledges, this hypothetical is consistent with the ALJ's RFC

determination. *See* ECF No. 10-1 at 30 (the second hypothetical posed "limitations consistent with

the RFC assessment concluded by Judge Baker in his decision"). Because, as previously

determined *supra*, the ALJ's RFC determination was supported by substantial evidence, the ALJ

was justified in relying on this hypothetical. Plaintiff argues the ALJ erred by failing to consider

the VE's responses to hypotheticals her own attorney posed to the VE, but the hypotheticals her

attorney posed exceeded the scope of Plaintiff's RFC. Accordingly, the ALJ did not err in relying

on the VE's testimony in response to a hypothetical consistent with Plaintiff's RFC.

### B. *The VE's testimony at the hearing was not inconsistent with the DOT.*

Finally, Plaintiff argues the ALJ erred by accepting testimony from the VE that was

inconsistent with the DOT and failed to resolve the conflict. ECF No. 10-1 at 31–33. Social

Security Ruling 00-4p clarifies 20 C.F.R. § 404.1566, which states, without more, that ALJs will

consider both the DOT and VE testimony to determine whether a Social Security claimant can find

work suited to her RFC. SSR 00-4p explains that its purpose is to require the ALJ (not the VE) to

"[i]dentify and obtain a reasonable explanation" for conflicts between the VE's testimony and the

DOT, and to "[e]xplain in the determination or decision how any conflict that has been identified

was resolved." SSR 00-4p, 2000 WL 1898704, at \*1 (Dec. 4, 2000). The Ruling then proceeds to

require that the ALJ undertake exactly these responsibilities. First, the ALJ must "[a]sk the VE . .

. if the evidence he or she has provided conflicts with information provided in the DOT;" and

second, "[i]f the VE's . . . evidence appears to conflict with the DOT," the ALJ must "obtain a

reasonable explanation for the apparent conflict." *Id.* at \*4. Notably, this second requirement is so

independent of the first that it does not rest on the VE's identification of a conflict. Rather, SSR

00-4p directs the ALJ to "resolve the conflict by determining if the explanation given by the VE .

. . is reasonable," *id.* at \*2, and to "explain the resolution of the conflict irrespective of how the conflict was identified," *id.* at \*4.

Plaintiff's sole basis for arguing that the ALJ erred in failing to resolve a conflict between the VE's testimony and the DOT is the Final Assembler job the VE proposed did not match the DOT number the VE provided. ECF No 10-1 at 32. Plaintiff states the DOT number 731.687-018 is for a Doll Wigs Hackler, not a Final Assembler, and the VE's testimony was therefore inconsistent with the DOT. *Id.* While Plaintiff is correct that the number 731.687-018 *is* for a Doll Wigs Hackler, she is incorrect that the VE mistakenly testified at the hearing. At the hearing, when identifying a representative job for a Final Assembler, the VE gave the DOT number 713.687-018, which is, in fact, for a Final Assembler (specifically of optical goods). *See* ECF No. 7-3 at 131 (hearing testimony of the VE responding to the ALJ's second hypothetical). In his opinion, the ALJ unfortunately transposed two of the digits, but still identified the correct title and description of the Final Assembler job. *See* ECF No. 7-4 at 46. The VE's testimony, therefore, was not in conflict with the DOT, and the ALJ had nothing to resolve. The ALJ's own typo is a harmless error. Accordingly, Plaintiff's argument is wholly without merit, and the ALJ did not err at step five.

## CONCLUSION

In summation, the Court finds that the ALJ properly found that Plaintiff was "not disabled" within the meaning of the Act from December 1, 2015, through the date of the ALJ's decision. Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Therefore, based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 10) is DENIED, Defendant's Motion for

Summary Judgment (ECF No. 13) is GRANTED, and the decision of the SSA is AFFIRMED. The clerk is directed to CLOSE this case.

Date: 23 January 2020

A. David Copperthite
United States Magistrate Judge